**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **SHAINA PREWITTE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**GARNIK, LLC,** a Florida company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR A JURY TRIAL** |

## CLASS ACTION COMPLAINT

This case addresses a disturbing trend whereby real estate brokerages direct their real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA") to generate business for themselves. Plaintiff Shaina Prewitte ("Plaintiff Prewitte" or "Prewitte") brings this Class Action Complaint and Demand for Jury Trial against Defendant Garnik, LLC ("Defendant" or "Garnik") to stop the Defendant from violating the TCPA by placing calls to consumers without consent who registered their phone number on the National Do Not Call Registry ("DNC"), and by placing calls to consumers between 9:00 PM and 8:00 AM. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Prewitte, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Prewitte is a resident of Springfield, Missouri.

2. Defendant Garnik is a company registered in Florida, with its headquarters located in Palm Harbor, Florida. Defendant Garnik conducts business throughout Florida.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since the wrongful conduct giving rise to this case was directed from the Defendant into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service “YouMail,” 3.8 billion robocalls were placed in September 2026 alone, at a rate of 128.0 million per day. www.robocallindex.com (last visited May 25, 2025).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. “Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC.” Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. “The FTC receives more complains about unwanted calls than all other complaints combined.” Staff of the Federal Trade Commission’s Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Garnik owns/operates 4 Keller Williams Real Estate offices, including Clearwater:



[3]

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://ubaldini-group.webflow.io/

14. Defendant Garnik is a real estate brokerage that works with consumers to sell and/or purchase properties in Florida.

15. Garnik also does business using the brand/trade name Ubaldini Group as the President of Garnik is Nicola Ubaldini and the Vice President is Gary Ubaldini.

16. Garnik provides group training to its all of its real estate agents under the name the Ubaldini Group:



[4]

17. Garnik generates revenue from its real estate agents through a 70/30 commission split, which doesn't include a 6% franchise fee on each transaction up to $3000:

[4] https://teamup.com/ks9r46v3rafb5vfifr

## Keller Williams Commission Split, CAP & Business Model Explained

DECEMBER 9, 2022 / UPDATED: DECEMBER 11, 2022 / BLOG, HOME2, KELLER WILLIAMS, WHY KW?

***What is the Keller Williams Commission Split?***

**Every agent is on a 70/30 commission split with Keller Williams Realty. That's 70% to the agent and 30% to the local office/brokerage. KW is a franchise, and a franchise fee (6% on each transaction up to $3,000) is included in this calculation. The amount paid to the local office and the franchise fee is capped annually. Once the Cap has been reached, the agent receives 100% of all commissions until they reset on their anniversary date.** [5]

### Franchise Fee

Keller Williams Realty International is funded by the calculation of the 6% of the commission payment. Because of this, the Keller Williams commission split is sometimes referred to as a 64/30/6% split. 64% to the agent, 30% to the market center, and 6% to KWRI (capped at $3000). This reference is not 100% accurate because the amount paid in the franchise fee always caps before the company dollar threshold is reached. Just understand that they are calculated against the total commission the agent/brokerage received in the transaction. [6]

18. Garnik has a vested interest in the success of its real estate agents, as those agents generate revenue for the company, including on each transaction.

19. Garnik does not merely permit cold calling — it directs agents to cold call general consumers, conduct circle prospecting, and pursue for sale by owner's ("FSBOs") and expired listings.

20. Circle prospecting entails placing calls to consumers within a defined geographic area to solicit real estate transactions through just sold and just listed calls.

[5] https://yourcbl.com/keller-williams-commission-split/
[6] Id.

21. Consumers with expired listing are consumers who had a property listed for sale, but the property did not sell and the listing was taken off the market.

22. Calls to consumers through circle prospecting and calls to FSBOs and consumers with expired listings are unsolicited, as these consumers have not given consent to receive telemarketing solicitation calls.

23. Even if the agents do not always disclose their affiliation to consumers, Garnik ratifies these unlawful calls by knowingly accepting the benefits of their conduct — commission-based revenue — and failing to discipline or deter the widespread and systematically trained conduct that led to the calls at issue here.

**GARNIK TRAINS ITS REAL ESTATE AGENTS TO ENGAGE IN COLD CALLING TO GENERATE BUSINESS**

24. Garnik provides direction under the guise of training to its real estate agents that focuses on placing cold calls to consumers.

25. On Defendant's website (https://clearwaterkw.wordpress.com/education/) Garnik explains what sets its brokerage apart from other Keller Williams brokerages by putting the focus on lead generation training which trains its real estate agents to pursue consumers with FSBO and expired listings:

## Education

**What makes Keller Williams so special? IT'S THE EDUCATION**

Any great business person knows that to continue to grow their business they have to have access to new ideas and concepts!

It's better to hang out with people better than you. Pick out associates whose behavior is better than yours and you'll drift in that direction. *Warren Buffett*

At Keller Williams we offer MANY different ways to learn. We have onsite classes taught by leaders in the industry who share their knowledge with other agents freely. We have access to HUNDREDS of videos through KW Connect that will show you how to handle any number of different situations and market conditions, taught by industry titans. We have formalized classes that teach you everything that you need to make your business successful soup to nuts!

**LEAD GENERATION**

You have nothing if you have no customers! We will teach you how to grow your business through MULTIPLE lead generating tactics! Here are just a few of the ways that you can learn to grow your business!

**FSBOs & Expireds**

John Dietz (Co-Partner in the hugely successful Dietz Rossi Group) teaches you how to contact FSBOs and Expireds in a way that will leave them (and you) comfortable and willing to hear back from you again (and again and...). He will then walk you through going on a preview, segueing into a listing appointment and then how to properly price the listing. Since has listed over XXX FSBOs THIS YEAR, this is the agent who can tell you the real scoop on how to get more sellers through prospecting FSBOs and Expireds. [7]

26. The Garnik group training schedule reveals that a regular class is taught – FSBO (For Sale By Owner) With Jake Yencarelli, a Garnik real estate agent and trainer:

### FSBO (For Sale By Owner) With Jake Yencarelli

×

**Tue Feb 4 2025, 1:00pm - 2:30pm**

Signup

Print

Share

Reminders: 0 Show

Calendar

Clearwater

Who

Clearwater

Description

Come learn how to have conversations and systems that convert FSBOS to clients! [8]

---

[7] https://clearwaterkw.wordpress.com/education/

[8] https://teamup.com/ks9r46v3rafb5vfifr/events/1817023290

27. Garnik posted a training video on the Ubaldini Group YouTube channel – Objection Handling with Success.[9]

28. In this training that was hosted by Howard Weinstein, the managing broker for the Garnik Tampa office,[10] Weinstein asks the participants if they have any objections that have been hearing a lot from consumers. Nancy McKinnon, a Keller Williams real estate agent asked, "I can see you know people around me are selling houses on their own. Why do I need you?" In response, Weinstein answered, "We're going to spend a lot of time on for sale by owners. Okay, because that's business for you…"[11]

29. Later in the training, Weinstein addresses FSBO listings specifically, addressing how his agents directing agents on ways to overcome objections from consumers who want to list their property on their own when speaking to them over the phone.[12]

30. The Garnik training schedule reveals a daily 8:00 AM training course entitled PIVOT Shift Ahead, a Keller Williams corporate training program that is taught by James Shaw, a Keller Williams agent, team leader, regional leader and coach who is the founder of Shift for Keller Williams:

---

[9] https://www.youtube.com/watch?v=vRm7BJ-2Fnc
[10] https://ubaldini-group.webflow.io/team
[11] https://www.youtube.com/watch?v=vRm7BJ-2Fnc – 5 minutes, 13 seconds
[12] Id. – 47 minutes, 8 seconds



[13]

31. PIVOT Shift Ahead is a training resource for real estate agents in which agents have training sessions related to real estate successes and other topics regarding real estate.[14]

32. The screenshot shown above references the PIVOT Shift Ahead corporate Facebook group that Garnik's real estate agents are directed to join: https://www.facebook.com/groups/SHIFTDaily/.

33. The PIVOT Shift Ahead Facebook group reveals that cold calling is a main focus of this training based on what real estate agents have posted in the group, including:



[15]

[13] https://teamup.com/ks9r46v3rafb5vfifr/events/1622818321-rid-1733144400
[14] https://www.facebook.com/groups/SHIFTDaily/files/files
[15] https://www.facebook.com/groups/762243167638247/search/?q=cold%20call

**Keslie Kattau Halonen**
July 15, 2024 ·

Does anyone work divorce leads? If so, do you have dialogues that you can share on how to cold call them.

13 41 comments [16]

**Jan Lee**
January 7 ·

I actually love cold calling Expireds.

Staying at the office or at home and practicing great conversation skills has become something I enjoy. When I cold call, I think about the telemarketers and bill collectors who may not have as many opportunities as I do to create real financial freedom. It puts things in perspective and keeps me grateful.

Funny thing is, after two years of pretending to call and secretly hoping no one would answer, I've finally embraced the process—and guess what? Expireds still answer their phones!— with **Paul Joon Lee**. [17]

34. The postings/comments in the Facebook group also reveal that placing cold calls to consumers with FSBO listings is a core part of the training. For example:

**Simone McCollough-Jackson**
March 17, 2023 ·

How do you go about calling FSBO/Expired listing?

17 69 comments [18]

**Mona Yassine**
February 7 ·

Good morning
Where I can get a script for expired and FSBO ?
Thanks

15 18 comments [19]

[16] Id.
[17] Id.
[18] https://www.facebook.com/groups/762243167638247/search/?q=FSBO
[19] Id.



[20]



[21]

35. By featuring PIVOT Shift Ahead and the related Facebook Group as part of its daily training schedule, Garnik is endorsing and otherwise ratifying conduct this training directs agents to engage in.

36. In addition, Nikki Ubaldini, the owner/broker of Garnik itself [22] directs her real estate agents to engage in placing cold calls to generate business.

37. In fact, Ubaldini was certified as a Keller Williams University Master Faculty Instructor and is quoted in page 22 of the Keller Williams University Lead Generation 36:12:3 – Power Session 2: Prospecting in which she states:

---

[20] https://www.facebook.com/groups/762243167638247/search/?q=FSBO
[21] Id.
[22] https://ubaldini-group.webflow.io/team

Prospecting

*Prospecting: The Critical Puzzle Piece*

Most people forget that *prospecting* has eleven letters and, instead, treat it like a four-letter word. For many real estate agents, the mere mention of the word *prospecting* conjures images of sitting at a telephone and calling complete strangers for hours on end, only to face rejection, insults, and slammed receivers. With this kind of thinking, would you think that you would enjoy prospecting? Of course not.

Adopt a new mindset about prospecting. See it in a new light and get excited about doing it at the highest level. Nikki Ubaldini, KWU Master Faculty Instructor, puts it best. "When I teach lead generation," she notes, "I say that the *P* word, *prospecting*, is not a dirty word. It's not just picking up the phone. It's getting involved in networking groups and in volunteer situations. It's making a point to meet people every single day."

Prospecting is more than phone calling strangers. Sure, cold calling FSBOs and expired listings can be a successful form of prospecting, but you will learn other effective ways of prospecting in upcoming Power Sessions, like holding open houses, hosting seminars, knocking on doors in a neighborhood, and visiting past customers.[23]

38. On the Garnik's site, the Defendant explains what sets it apart from other Keller Williams brokerages, referencing a FSBO expert stating:

Our agents share their knowledge with each other. You do not just sit in a room and watch videos for "education", our short sale expert teaches her tips and tricks, our FSBO expert tells you EXACTLY how he makes his calls (and even has shadow prospecting from time to time), our marketing specialist shares all her secrets, our contract specialist holds....well you get the picture!

We get outside specialists in to teach us. Lately we have had a number of seminars where we get the Listingbook Reps in to teach their systems, we have had Top Producer come and show us the new upgrades, we have motivational specialists in to talk to us about personality types and how to best work with our clients.

Overall it is our desire to help EVERY agent succeed that makes the difference![24]

39. The Garnik group training schedule reveals that Melanie Shoemake, a Garnik real estate agent in Florida provides weekly group lead generation sessions to Garnik agents in which other agents are directed to make telemarketing calls:

---

[23] https://successatkw.com/wp-content/uploads/Downloads/Course-Manuals/Lead-Generation-36-12-3/Power-Session-02-Prospecting.pdf

[24] https://clearwaterkw.wordpress.com/faq/



[25]

40. Similarly, the Garnik group training schedule reveals that Jake Yencarelli, another Garnik agent, provides group lead generation training to Garnik real estate agents in which he trains agents to place calls to generate business:

[25] https://teamup.com/ks9r46v3rafb5vfifr/events/1868902841-rid-1747143000



[26]

41. Bryan Coward is another Garnik LLC real estate agent who provides regular training to Garnik real estate agents.

42. The Garnik Instagram page reveals that Coward provides training to Garnik agents on placing telemarketing calls to consumers with expired property listings:

[26] https://teamup.com/ks9r46v3rafb5vfifr/events/1816995528-rid-1738587600



[27]

43. Vulcan7 is a paid lead generation system that notifies real estate agents about new FSBO and expired leads, regardless of whether those leads have listed their numbers on the National Do Not Call Registry, and which provides cell phone numbers and other contact information to those agents.[28]

44. Vulcan7 posted an interview on its YouTube channel with Coward in which Coward explains how he focuses on consumers with expired listings to generate business using Vulcan7:

[27] https://www.instagram.com/stories/highlights/18158386192354740/
[28] https://www.vulcan7.com/


368 views Nov 22, 2023 Vulcan7 Roadmap
🔥 In this latest episode of Vulcan7 Roadmap, we sit down with Bryan Coward, a realtor from Tampa, about his experience in the industry. Bryan shares that he transitioned from owning a production company to real estate after realizing the limitations of scaling his previous business. He primarily focuses on expired and canceled listings for lead generation and credits Vulcan7's Take 52 sessions for his success in this area. Bryan uses a 10-folder system to organize his calls and follows up with leads in the afternoon. He emphasizes the importance of consistent lead generation and making daily contacts. Bryan also mentions that he teaches classes and courses to help other agents achieve their goals.

🔗 Connect with Bryan Coward:
https://www.bryancoward.com/connect
@bryancowardpa7285
/ bryancowardrealtor
🔥 Sign Up for Vulcan7→ https://www.vulcan7.com/referral/brya...

[29]

45. The Garnik Youtube channel features a training video from Michelle Moreono, a Garnik agent, about lead generation– 36:12:3 Lead Generation FARMING with Michelle Moreno.[30]

46. This training video centers around lead generation by targeting consumers that the real estate agent has not met yet, including consumers with FSBO and expired listings.

47. In this video, Moreono states, “I’m the first agent to call a FSBO or an expired listing in my neighborhood. Always,” with the following image displayed on the screen:

[29] https://www.youtube.com/watch?v=Q1A4AusAaZQ
[30] https://www.youtube.com/watch?v=hRw229ZwRTY



[31]

48. Based on the above, Garnik directs its real estate agents to engage in telemarketing, including cold calls to consumers like Plaintiff Prewitte.

49. And the Defendant ratifies this conduct by acknowledging the propriety of this conduct, retaining the financial benefit from it, failing to discipline agents, and systematically training and equipping them to make these unlawful calls.

50. Attached hereto as Exhibit A is the Declaration of Expert Richard Rosenblum, a licensed real estate broker in nine states with over 30 years of industry experience. Mr. Rosenblum's declaration confirms that Florida law imposes a non-delegable duty on real estate brokers to supervise and control their agents' advertising and telemarketing conduct, including compliance with the Telephone Consumer Protection Act (TCPA) and Do Not Call (DNC) regulations.

[31] Id. – 1 hour, 56 minutes, 16 seconds

51. As Mr. Rosenblum explains, Florida's statutes (Fla. Stat. §§ 475.01(1)(j), 475.01(2), 475.25(1)(u), 475.15, 475.161, 475.42(1)(a)-(b), and 501.059) and Florida Administrative Code provisions (r. 61J2-24.001, r. 61J2-10.025(1)) make the broker directly responsible for agent conduct, regardless of whether agents are labeled "independent contractors." These obligations include implementing written DNC/TCPA compliance policies, monitoring agent telemarketing, and disciplining violations.

52. Consistent with Mr. Rosenblum's expert findings, Defendant Garnik LLC failed to exercise the required supervision and control over its agents' telemarketing practices and, instead, promoted cold-calling practices that foreseeably led to violations of the TCPA.

53. In response to these calls, Plaintiff Prewitte brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF PREWITTE'S ALLEGATIONS

54. Plaintiff Prewitte is the subscriber and sole user of the cell phone number ending with 0418.

55. Plaintiff Prewitte cell phone number was registered on the DNC on October 7, 2005.

56. Plaintiff Prewitte uses her cell phone number for personal use only as one would use a landline telephone number in a home. Such use includes speaking to family and friends.

57. Plaintiff Prewitte's cell phone number is not associated with a business and is not used for business-related purposes.

58. Plaintiff Prewitte pays for the use of her cell phone personally. It is not reimbursed by a business.

59. Plaintiff Prewitte resides in Missouri, but her cell phone number has a 727 Florida area code.

60. On September 13, 2024 at 7:25 AM, Plaintiff Prewitte received an unsolicited call to her cell phone from 727-766-0463.

61. When Plaintiff Prewitte answered this call, Karina Furlin introduced herself as a Keller Williams agent and said she was calling about a property that was placed for sale by Plaintiff's uncle and aunt in Florida.

62. Furlin was offering her services as a real estate agent to assist in selling the property.

63. Furlin is a Keller Williams real estate agent who works for Garnik:



[32]

[32] https://mysignatureteam.kw.com/agent/karina-furlin/323151

| Licensee | | | |
|---|---|---|---|
| **Name** | FURLIN, KARINA PA | **License Number** | SL3215898 |
| **Rank** | Real Estate Sales Associate | **License Expiration Date** | 09/30/2028 |
| **Primary Status** | Current | **Original License Date** | 10/27/2008 |
| **Secondary Status** | Active | | |

Related License Information

| License Number | Status | Related Party | Relationship Type | Relation Effective Date | Rank | Expiration Date |
|---|---|---|---|---|---|---|
| CQ1008960 | Current | GARNIK LLC DBA:KELLER WILLIAMS REALTY | Employed By | 09/20/2023 | Real Estate Corporation | 09/30/2028 |

[33]

64. Plaintif Prewitte told Furlin that the property does not belong to her and the call was ended.

65. On March 31, 2025 at 7:31 AM, Plaintiff Prewitte received a 2nd unsolicited call to her cell phone from Karina Fulin.

66. Both of the calls that Plaintiff received are in violation of the TCPA as both were received between 9:00 PM and 8:00 AM.

67. Plaintiff Prewitte has never done business or provided her cell phone number to Garnik or any of its related entities.

68. Plaintiff Prewitte did not have a property for sale during the times she was receiving these calls.

69. The unauthorized solicitation telephone calls that Plaintiff Prewitte received from or on behalf of Garnik have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

[33] https://www.myfloridalicense.com/portalsearches/VerifyLicensee/LicenseRelation

70. Seeking redress for these injuries, Plaintiff Prewitte, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

71. Plaintiff Prewitte brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) one or more Garnik affiliated agents called more two or more times in the aggregate, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant's agents called Plaintiff.
>
> **Early/Late Calls Class**: All persons in in the United States to whom, within four years prior to the filing of this action through the date of class certification, Defendant Garnik (or one of its affiliated agents) placed more than one call within an 12-month period, soliciting a real estate transaction, where at least two such calls were placed before 8:00 AM or after 9:00 PM in the recipient's local time zone.

72. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Prewitte anticipates the need to amend the Class definitions following appropriate discovery.

73. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

74. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether Defendant placed calls to Plaintiff and other consumers either before 8:00 AM or after 9:00 PM;

(d) whether the calls constitute a violation of the TCPA:

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

75. **Adequate Representation**: Plaintiff Prewitte will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Prewitte has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Prewitte and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Prewitte nor her counsel have any interest adverse to the Classes.

76. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards

of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Prewitte. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Prewitte and the Do Not Call Registry Class)**

77. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

78. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

79. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

80. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated,

telephone solicitations to telephone subscribers such as Plaintiff Prewitte and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

81. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Prewitte and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

82. As a result of Defendant's conduct as alleged herein, Plaintiff Prewitte and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

83. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act,**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Prewitte and the Early/Late Calls Class)**

84. Plaintiff repeats and realleges paragraphs 1-76 of this Complaint and incorporates them by reference herein.

85. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "(1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)."

86. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Prewitte and the Early/Late Calls Class members who received calls either before 8:00 AM or after 9:00 PM.

87. As a result of Defendant's conduct as alleged herein, Plaintiff Prewitte and the Early/Late Calls Class suffered actual damages and, under section 47 U.S.C. § 227(c)(5), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

88. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Early/Late Calls Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Prewitte requests a jury trial.

Respectfully Submitted,

**SHAINA PREWITTE**, individually and on behalf of all others similarly situated,

DATED this 2nd day of November, 2026.

By: */s/ Tylor Whitham*
Tylor Whitham
Whitham Law Firm
12120 State Line Rd
Ste Box 265
Leawood, KS 66209
816-522-3399
tylor@whithamlawfirm.com

*Local counsel for Plaintiff and the putative Classes*

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

**Lead Counsel for Plaintiff and the putative Classes*